# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02452-NYW-SBP

_____

E-GATE HOLDING AG, a Swiss aktiengesellschaft,

    Plaintiff,

v.

WALKER MANUFACTURING COMPANY, a Colorado corporation; and FEDERICA SPANO, an individual,

    Defendants.
_____

# (PROPOSED) SCHEDULING ORDER
_____

## 1.  DATE OF CONFERENCE AND APPEARANCES COUNSEL AND PRO SE PARTIES

The scheduling conference took place on December 13, 2023 at 4:00 p.m. via telephone.

The following counsel appeared on behalf of the parties:

**Counsel for Plaintiff, E-Gate Holding AG:**
Erik K. Schuessler
Kristen J. C. Powell
Burns, Figa & Will, P.C.
6400 Fiddlers Creen Cir., Suite 1000
Greenwood Village, CO 80111
Phone: (303) 796-2626
Email: eschuessler@bfwlaw.com
      kpowell@bfwlaw.com

**Counsel for Defendant, Walker Manufacturing Company:**
Charles W. Steese
Hannah G. Dolski
Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road, Suite 290

Scottsdale, AZ 85254
Phone: (480) 800-3537
Email: csteese@pswmlaw.com
         hdolski@pswmlaw.com

**Counsel for Defendant, Federica Spano:**
Douglas N. Marsh
Cambridge Law LLC
4610 South Ulster Street, Suite 150
Denver, CO 80237
Phone: (303) 488-3338
Email: doug@cambridgelaw.com

## 2.  STATEMENT OF JURISDICTION

The parties agree that subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 based on Plaintiff's claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.  In addition, jurisdiction is proper in this Court pursuant to 28 U.S. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

The parties further agree that this Court has personal jurisdiction over both Defendants and that venue is proper in this Court.

## 3.  STATEMENT OF CLAIMS AND DEFENSES

### a. Plaintiff:

In the late 1990s, Wolfgang Loerli (E-Gate's owner and CEO) purchased the exclusive rights to distribute Walker lawnmowers throughout Europe. He paid approximately $1 million for those exclusive distributorship rights. Over the next 25 years, E-Gate invested an immense amount of time, money, and energy to growing the Walker brand in Europe. Through E-Gate's extensive European network of contacts, its ability to personally communicate with dealers throughout Europe (thanks to Mr. Loerli's fluency in

several languages), and its unmatched expertise in the European lawnmower industry, E-Gate developed the best distributor network in Europe in the industry and cultivated excellent relations with customers. By 2011, E-Gate earned additional exclusive distributorship rights throughout the Middle East and Asia as well. As compensation, Walker agreed to pay E-Gate 10% of sales within its exclusive distributorship territory for so long as Walker sold mowers in the territory.

In 2022, Walker devised a scheme under which it could obtain E-Gate's know-how and trade secrets that would allow Walker to continue doing business in the Eastern Hemisphere without E-Gate's involvement—all in an effort to try to end the 10% commission payments to E-Gate. To accomplish this, Walker conspired with E-Gate employee and board member Federica Spano—Mr. Loerli's protégé who was positioned to lead the next generation of E-Gate's distribution of Walker mowers abroad. At Walker's urging, Spano misappropriated and shared with Walker volumes of E-Gate's confidential and trade secret information regarding its distributor network in the Eastern Hemisphere, including valuable information regarding each customer that had been meticulously compiled over the years.

Armed with E-Gate's trade secrets that were needed for continued operations in the Eastern Hemisphere, Walker then advised E-Gate that its exclusive distributorship rights were "terminated." However, those rights (which had been purchased from a third party and had always been recognized as E-Gate's personal and transferable property right) were owned outright by E-Gate and could not be "terminated" by Walker. Walker then hired Spano as a "consultant," who brought with her even more of E-Gate's trade

secrets that would allow Walker to continue selling mowers in the Eastern Hemisphere and building its network without having to compensate E-Gate for the fruits of its labor.

In this action, E-Gate seeks damages from Walker and Spano for civil theft, misappropriation of business value, breach of contract, tortious interference with contract, unjust enrichment, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, misappropriation of trade secrets (under both the Colorado Uniform Trade Secrets Act and the federal Defend Trade Secrets Act), and civil conspiracy.

**b. Defendants:**

Walker Manufacturing Company ("Walker") is a Fort Collins-based manufacturer of commercial lawnmowers. Walker prototyped lawnmowers in the 1970s and started selling domestically around 1980, expanding sales to European distributors shortly thereafter.

In Europe, Walker saw that other manufacturers of lawn equipment—specifically BlueBird and Billy Goat—used a "manufacturers representative" to help them identify distributors who would purchase and sell product. As a result, Walker decided to do the same, and retained Sven Gillfors. Mr. Gillfors provided services not only to Walker, but also to Billy Goat and BlueBird. The role of the manufacturer's representative was to create and foster relationships between the manufacturer and the distributors. That distributor would then sell the manufacturer's products to dealers who would, in turn, sell the manufacturer's products to consumers. The manufacturer's representative never purchased or sold the manufacturer's products; they simply helped to establish relationships with, and promote the products to, distributors.

In the late 1990s, Mr. Gillfors neared retirement and transitioned his work to E-Gate, under the direction and control of Wolfgang Loerli. Walker was unaware of the specific nature of the transition, including the terms of an agreement, if any, entered into between Mr. Gillfors and E-Gate or any payment made by E-Gate to Mr. Gillfors. E-Gate continued Mr. Gillfors' work, serving as Walker's manufacturer's representative in Europe.

Walker and E-Gate never entered into any form of agreement regarding this continuation of services. Walker understands that E-Gate and/or Mr. Loerli similarly continued to serve as Billy Goat and BlueBird's manufacturer's representatives, just as Mr. Gillfors had. Walker understands, however, that both Billy Goat and BlueBird terminated their relationships with E-Gate and/or Mr. Loerli in the early 2000s. Over time, Walker agreed to expand E-Gate's territory beyond Europe, with the exclusion of certain countries with which Walker already had an existing relationship with a distributor (the "E-Gate Territory").

E-Gate used a system called "Basecamp" through which Mr. Loerli purported to provide Walker with updates of his efforts and communications with the various distributors. E-Gate would routinely send Basecamp updates to several Walker employees. Thus, Walker had access to the contents of Basecamp. Walker often explicitly requested that Mr. Loerli provide them with discrete information outside of Basecamp, as Walker employees did not find the information in Basecamp particularly useful. However, any information contained in Basecamp related to Walker distributors, dealers, or products was the property of Walker.

By the 2010s, Walker began to question the value it was receiving from E-Gate

5

and Mr. Loeri specifically. At that point, Walker already had established direct relationships with its distributors, and the distributors were reaching out to Walker directly with questions and orders, rather than going through E-Gate. Simultaneously, Walker's sales in the E-Gate Territory were declining. Walker believed that Mr. Loerli was focusing the majority of his attention on a start-up website company he was attempting to develop, which was completely unrelated to Walker and/or lawnmowers generally. The relationship between Walker and E-Gate continued to become more and more strained over the last decade, with Walker repeatedly requesting information and E-Gate consistently refusing to provide it.

Ultimately, Walker decided to terminate its at-will relationship with E-Gate, which it did on September 30, 2022 via formal written notice hand-delivered in an in-person meeting. Walker agreed to pay E-Gate its standard commission on all sales of Walker products to the distributors in the E-Gate Territory through December 31, 2022, regardless of whether the products shipped in 2022 or later.

In the summer of 2023, Walker engaged Ms. Spano as an independent contractor to promote and support the marketing of Walker products in Europe. At no time did Walker ever conspire with Ms. Spano to harm Mr. Loerli or E-Gate, and at no time did Ms. Spano provide to Walker anything proprietary about E-Gate's work or otherwise violate any duty owed to E-Gate.

### 4.  UNDISPUTED FACTS

The following facts are undisputed:

1. Defendant Walker is a Colorado corporation with a principal place of business

located at 5925 East Harmony Road, Fort Collins, Colorado 80528.

2. Defendant Spano is an individual over the age of eighteen who resides in Switzerland and is a citizen of Italy.

3. This court has subject matter jurisdiction over the instant dispute.

4. Venue is proper in this Court.

5. Ryan Walker hired Bob Clancy as Walker's Sales Manager in August 2020.

6. Walker, through Ryan Walker and Bob Clancy, handed Mr. Loerli a letter on September 30, 2022 which stated that Walker was terminating the relationship between Walker and E-Gate effective December 31, 2022.

7. The September 30, 2022 letter, which was signed by Ryan Walker in his capacity as President of Walker, stated that "[a]s of [December 31, 2022], you, as well as Walker Mowers EMEAA LLC and/or any subsidiary company owned, controlled or otherwise associated with you, will no longer be permitted to represent Walker Mowers or the business dealings of Walker Manufacturing Company. We thank you for your commitment to Walker over the years."

### 5. COMPUTATION OF DAMAGES

This chart contains E-Gate's assessment of the damages categories it claims are due. Defendants vigorously deny that they took any action that is actionable or otherwise justifies the assessment of any damages whatsoever.

| Description of Category of Damages | Computation |
| --- | --- |

| | |
|---|---|
| The value of E-Gate's exclusive distributorship rights in the EMEAA territory, trebled under C.R.S. § 18-4-405. | To be determined in discovery and/or by damages expert |
| 10% of all sales of Walker products sold within E-Gate's exclusive EMEAA territory after December 31, 2022. | To be determined in discovery and/or by damages expert |
| Unjust enrichment damages consisting of the benefit that E-Gate conferred on Walker and Spano without commensurate compensation. | To be determined in discovery and/or by damages expert |
| Damages flowing from Walker Mowers Switzerland AG's termination of its long-term contract with E-Gate based on Spano's breaches of fiduciary duties and Walker's conspiratorial aiding and abetting of same. | To be determined in discovery and/or by damages expert |
| Disgorgement of the compensation that E-Gate paid to Spano during her period of disloyalty. | Approximately $50,000 (salary plus expenses for travel, assuming disloyalty began on June 1, 2022 and not sooner) |
| Damages for the actual loss caused by Defendants' misappropriation of E-Gate's trade secrets, under C.R.S. § 7-74-104(1) and/or 18 U.S.C. § 1836(b)(3)(B)(i)(I). | To be determined in discovery and/or by damages expert |
| Damages for Defendants' unjust enrichment caused by their misappropriation of E-Gate's trade secrets that are not taken into account in computing actual loss, under C.R.S. § 7-74-104(1) and/or 18 U.S.C. § 1836(b)(3)(B)(i)(II). | To be determined in discovery and by damages expert |
| A reasonable royalty for Defendants' unauthorized disclosure or use of E-Gate's trade secrets, under C.R.S. § 7-74-104 and/or 18 U.S.C. § 1836(b)(3)(B)(ii). | To be determined in discovery and by damages expert |
| Exemplary damages under C.R.S. § 7-74-104(2) because Defendants' misappropriation is attended by circumstances of fraud, malice, or a willful and wanton disregard of E-Gate's rights and feelings. | To be determined |

| | |
|---|---|
| Exemplary damages of two times the amount of damages awarded based on Defendants' willful and malicious misappropriation of E-Gate's trade secrets, under 18 U.S.C. § 1836(B)(3)(C). | To be determined |
| Attorney's fees and costs under C.R.S. § 18-4-405, C.R.S. § 7-74-105, and 18 U.S.C. § 1836(B)(3)(D). | To be determined |
| Derivative noneconomic loss or injury based on the emotional stress, pain and suffering, inconvenience, and impairment of quality of life suffered by E-Gate's owner Wolfgang Loerli | $250,000 (limit under C.R.S. § 13-21-102.5(2)(b)) |
| Pre-judgment interest, post-judgment interest, and all other interest allowed by law. | To be determined |

Defendants allege that E-Gate's trade secret claims are premised on Walker obtaining information alleged trade secrets from Basecamp. As described above, E-Gate routinely provided numerous Walker employees with access to Basecamp. There is nothing that could even arguably be trade secret. Moreover, E-Gate has no facts whatsoever that even suggest Ms. Spano provided, or that Walker obtained, anything Walker did not already have access to in the ordinary course of business. As such, Defendants intend to seek the fees incurred in defending themselves against the trade secret claims pursuant to Rule 11, Fed. R. Civ. P.

### 6.  REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a.  Date of Rule 26(f) meeting:

November 17, 2023.

b.  Names of each participant and party he/she represented:

Erik K. Schuessler for Plaintiff, E-Gate Holding AG.

9

       Charles W. Steese and Hannah G. Dolski for Defendant, Walker Manufacturing Company.

       Douglas N. Marsh for Defendant, Federica Spano.

c. Statement as to when Rule 26(a)(1) disclosures were made or will be made.

       The parties exchanged initial disclosures on December 15, 2023.

d. Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

       Given the intervening Thanksgiving holiday and the press of business for counsel, the parties have agreed to exchange disclosures on December 15, 2023 (approximately two weeks after they would normally be due under the Federal Rules of Civil Procedure).

e. Statement concerning any agreements to conduct informal discovery:

       None.

f. Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

       None.

g. Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

       The parties anticipate that their claims and defenses will involve electronically stored information, and that a substantial amount of disclosure or discovery may involve information or records maintained in

electronic form. Given the lengthy amount of time involved (1996 to 2022), the documents needed to be searched will be extensive.

The parties have been instructed to preserve any and all electronic information in their possession, custody, or control relating to the parties' claims and defenses.

The parties agree to produce electronically stored information pursuant to ESI protocols that will be separately agreed upon by the parties.

h. Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The parties believe that settlement discussions will only be productive once a significant portion of fact discovery has been completed.

### 7. CONSENT

All parties  ☐ [have]   X   [have not] consented to the exercise of jurisdiction of a magistrate judge.

### 8. DISCOVERY LIMITATIONS

a. Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

None (presumptive limitation of no more than 10 total depositions per side under Fed. R. Civ. P. 30(a)(2)(A)(i), including expert depositions, and no more than 25 interrogatories per party, including discrete subparts, under Fed. R. Civ. P. 33(a)(1)).

11

    b.    Limitations which any party proposes on the length of depositions.

        The parties will work in good faith to complete each deposition within seven hours of on-the-record time under Fed. R. Civ. P. 30(d)(1).

    c.    Limitations which any party proposes on the number of requests for production and/or requests for admission.

        25 requests for production per party and for each party (*i.e.*, each defendant may serve up to 25 requests for production on Plaintiff, and Plaintiff may serve up to 25 requests for production on each defendant) and 25 requests for admission per party and for each party.

    d.    Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:

        35 days before the discovery cutoff.

    e.    Other Planning or Discovery Orders

        None.

### 9. CASE PLAN AND SCHEDULE

    a.    Deadline for Joinder of Parties and Amendment of Pleadings:

        **January 26, 2024.**

    b.    Fact Discovery Cut-off:

        **October 31, 2024.**

    c.    Dispositive Motion and Rule 702 Motion Deadline:

        **February 28, 2025.**

    d.    Expert Witness Disclosure

      1.      The parties shall identify anticipated fields of expert testimony, if any.

          Plaintiff:      1) Economic damages

                              2) Industry standards expert on European distributorships

          Defendants:  1) Economic damages

                              2) European business customs

                              3) Trade secrets

      2.      Limitations which the parties propose on the use or number of expert witnesses.

          Three total experts per side.

      3.      The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **November 15, 2024.**

      4.      The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **December 20, 2024.**

      5.      Expert discovery cut-off: **January 31, 2025**.

f.      Identification of Persons to Be Deposed:

At this time, Plaintiff anticipates that it may depose:

1. Rule 30(b)(6) deposition of Walker Manufacturing Company (7 hours)

2. Federica Spano (7 hours)

3. Bob Walker (7 hours)

4. Ryan Walker (5 hours)

5. Bob Clancy (5 hours)

      6. Marc Furrer (5 hours)

      7. TBD European distributor A (5 hours)

      8. TBD European distributor B (5 hours)

      9. Any expert disclosed by Defendants (7 hours each).

At this time, Defendants anticipate that they may depose:

1. Rule 30(b)(6) deposition of E-Gate Holding AG (7 hours)
2. Wolfgang Loerli (7 hours)
3. Representative of Billy Goat (7 hours)
4. Representative of BlueBird (7 hours)
5. TBD European distributor A (5 hours)
6. TBD European distributor B (5 hours)
7. Marc Furrer (5 hours)
8. Any expert disclosed by Plaintiff (7 hours each)

## 10. DATES FOR FURTHER CONFERENCES

a. A telephonic status conference will be held in this case at the following date and time:

**<u>September 18, 2024 at 10:00 am MST</u>**.

The parties shall attend by calling 571-353-2301, Guest meeting ID- 868150043. All attendees shall please mute their phone when not speaking and not use speaker phone.

b. Judge Wang will set a Final Pretrial Conference/Trial Preparation Conference date after the dispositive motions deadline has passed and the Court has issued rulings on all such motions. Within seven (7) days of the dispositive motion deadline, if no such motions are filed, the Parties shall file a joint motion to set a Telephonic Status Conference at which Judge Wang will set a Final Pretrial Conference/Trial Preparation Conference and date for trial.

## 11. OTHER SCHEDULING MATTERS

a. Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

    None.

b. Anticipated length of trial and whether trial is to the court or jury.

    Five to eight-day jury trial.

c. Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, , La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.

    None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this 22nd day of December, 2023.

BY THE COURT:

_____
United States Magistrate Judge

APPROVED:

_____
Erik K. Schuessler
Burns, Figa & Will, P.C.
6400 Fiddlers Creen Cir., Suite 1000
Greenwood Village, CO 80111
(303) 796-2626
**Counsel for Plaintiff, E-Gate Holding AG**

_____
Charles W. Steese
Hannah G. Dolski
Papetti Samuels Weiss McKirgan LLP
16430 North Scottsdale Road, Suite 290
Scottsdale, AZ 85254
(480) 800-3537
**Counsel for Defendant, Walker Manufacturing Company**

_____
Douglas N. Marsh
Cambridge Law LLC
4610 South Ulster Street, Suite 150
Denver, CO 80237
(303) 488-3338
**Counsel for Defendant, Federica Spano**